1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4    UNITED STATES OF AMERICA,    )   CR-01-20127-JF
                                  )
5              Plaintiff,         )
                                  )   San Jose, CA
6                   vs.           )   October 2, 2001
                                  )
7    ROGER VER,                   )
                                  )
8              Defendant.         )
     _____)

9

10                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JEREMY FOGEL
11               UNITED STATES DISTRICT JUDGE

12   A P P E A R A N C E S:
     For the United States of    United States Attorney's
13   America:                    Office
                                 By: SCOTT H. FREWING, AUSA
14                               150 Almaden Avenue
                                 Suite 900
15                               San Jose, CA   95113

16   For the Defendant:          Law Offices of Stuart D.
                                 Kirchick
17                               By:  STUART D. KIRCHICK
                                 1143 Story Road
18                               Suite 210
                                 San Jose, CA   95122

19

20

21
     Court Reporter:             PETER TORREANO, CSR
22                               License Number C-7623

23

24

25

1    San Jose, California                    October 2, 2001

2                    P R O C E E D I N G S

3         THE COURT:  United States versus Roger Ver.

4         MR. NEDROW:  Jeff Nedrow for the United States,

5    Your Honor.

6         Your Honor, this is Mr. Kirchick's and

7    Mr. Frewing's case and my understanding is there's some

8    modifications to the plea agreement being made and

9    Mr. Kirchick is in another court and will be here

10   shortly.

11        THE COURT:  So we'll pass this one, too.

12        MR. NEDROW:  Thank you.

13        (After reporting unrelated matters, not herein

14   transcribed, the following proceedings were held:)

15        THE COURT:  All right.  I think Mr. Kirchick is

16   with us.  We go to the Roger Ver matter.

17        United States versus Roger Ver.

18        MR. FREWING:  Good morning again, Your Honor.

19        Scott Frewing for the United States.

20        MR. KIRCHICK:  Good morning, Your Honor.

21        Stuart Kirchick for Mr. Ver.  May I have one

22   moment in reviewing the plea agreement with the

23   Government?

24        THE COURT:  Okay.

25   //

1          (After reporting unrelated matters, not herein

2     transcribed, the following proceedings were held:)

3          THE COURT:  Yes.  So back on the record.

4          Is it "Ver" or "Ver"?

5          MR. KIRCHICK:  Your choice, Your Honor.

6          THE COURT:  Okay.  Thank you.

7          MR. FREWING:  Thank you, Your Honor, for

8     accommodating us.

9          THE COURT:  Can I get appearances again, please.

10          MR. FREWING:  Scott Frewing for the United

11     States, Your Honor.

12          MR. KIRCHICK:  Stuart Kirchick for Roger Ver.

13     He is present.

14          THE COURT:  And do you have a disposition?

15          MR. FREWING:  We do, Your Honor.  And if Mr. Ver

16     would like to sign it in court here, we will pass

17     forward a plea agreement.

18          Your Honor, I'm going to pass forward a signed

19     plea agreement.

20          As the Court is reviewing that, the Court may

21     note on page 4 of paragraph 7 an annotation to fix an

22     incorrectly inverted less than symbol to a greater than

23     symbol, and all the parties have initialed that change.

24          THE COURT:  Okay.  Okay.  Let's have the

25     Defendant sworn.

1          THE CLERK:  Raise your right hand, please.

2          Do you solemnly swear that any statements you

3    shall give to the Court concerning your plea of guilty

4    shall be the truth, the whole truth, and nothing but the

5    truth, so help you God?

6          THE DEFENDANT:  I do.

7          THE COURT:  All right.  Mr. Ver, I'm going to be

8    asking you some questions.  If there is anything you

9    need me to repeat or explain, please tell me.  If you

10   need to speak to Mr. Kirchick before you answer a

11   question, please do that.  And please remember that you

12   have to tell the truth and give me complete and truthful

13   answers to all of my questions and that if you fail to

14   do that you can be prosecuted for making false

15   statements.

16         Do you understand that, sir?

17         THE DEFENDANT:  I do.

18         THE COURT:  What is your true name?

19         THE DEFENDANT:  Roger Keith Ver.

20         THE COURT:  And how old are you?

21         THE DEFENDANT:  22, Your Honor.

22         THE COURT:  Where were you born?

23         THE DEFENDANT:  San Jose, California.

24         THE COURT:  Okay.  You are a United States

25   citizen?

1          THE DEFENDANT:  I am.

2          THE COURT:  Your native language is English; is

3    that right?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And you read and understand English;

6    is that right?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And you read and understood the plea

9    agreement; is that correct?

10          THE DEFENDANT:  To the best of my ability, Your

11    Honor.

12          THE COURT:  To the extent that you have any

13    questions about the plea agreement, was Mr. Kirchick

14    able to answer them?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Have you had enough time to speak

17    with Mr. Kirchick about the plea agreement?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you have any complaint or any

20    dissatisfaction with the legal services you've received?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  Other than the promises contained in

23    this written plea agreement, has anyone made any

24    promises to you in exchange for your guilty plea?

25          THE DEFENDANT:  No, Your Honor.

1          THE COURT:  And has anyone threatened you in any

2     way in order to cause you to plead guilty in this case?

3          THE DEFENDANT:  It depends on how you define

4     "threaten," but I would say no, Your Honor.

5          THE COURT:  Let me be clear since I saw you

6     hesitate there.  I have no doubt -- I don't want to know

7     what you and Mr. Kirchick talked about, but I have no

8     doubt Mr. Kirchick discussed with you what could happen

9     if you went to trial and the advantages of entering a

10    guilty plea as opposed to going to trial.  That's not

11    what I mean.

12         THE DEFENDANT:  Okay.

13         THE COURT:  By "threat" what I mean is someone

14    said if you don't plead guilty, you're going to be

15    harmed or some member of your family will be harmed or

16    something bad will happen to you apart from the legal

17    process.

18         THE DEFENDANT:  Nothing apart from the legal

19    process, Your Honor.

20         THE COURT:  So the threat that you were

21    referring to is the threat you would receive more time

22    in prison if you were to go to trial and be convicted?

23         THE DEFENDANT:  That and additional charges,

24    Your Honor.

25         THE COURT:  And additional charges.  Okay.

1    So your decision to plead guilty has, in fact, been

2    influenced by the possibility that you could receive

3    additional charges and additional prison time; is that

4    right?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  But there are no other threats of

7    any kind or nature other than that?

8              THE DEFENDANT:  None other than that, Your

9    Honor.

10             THE COURT:  Are you presently under the

11   influence of any drug or medication?

12             THE DEFENDANT:  I've been taking cold medicine.

13             THE COURT:  All right.  Does the cold medicine

14   affect your ability to understand what you're doing

15   right now?

16             THE DEFENDANT:  It might impair my ability to

17   determine that.  I feel pretty miserable.  I have the

18   flu currently.

19             THE COURT:  Would it be better to do this a

20   different day?

21             THE DEFENDANT:  I'm prepared to do this today.

22             THE COURT:  Again, I don't want to have a

23   problem later because on reflection you don't believe

24   you understood what you were doing.  Does the medicine

25   you take affect your judgment to the extent that you

1  don't understand the questions I'm asking you?

2        THE DEFENDANT:  I don't think so, Your Honor.

3        THE COURT:  All right.  Does it affect your

4  understanding of the importance of this particular

5  proceeding?

6        THE DEFENDANT:  I hope not, Your Honor.  I'm

7  sure my mental capacity isn't, you know, up to par

8  compared to how it would be normally.

9        THE COURT:  Well, I want to be clear here that

10  if you have any doubt about your ability to comprehend

11  and understand what's taking place we should -- we

12  should do it another time.

13        This is truly a case of haste makes waste.  If

14  you plead guilty today and decide two weeks from now

15  that I really didn't mean to do that and if it hadn't

16  been for that medicine I wouldn't have, it's going to be

17  a very messy thing for everybody concerned especially

18  you.

19        So if you have any question in your mind about

20  your ability to think clearly this morning, I will

21  continue this to another day.

22        THE DEFENDANT:  In all honesty I think that that

23  might upset, you know, two of the attorneys present and

24  I'm willing to sign today.

25        THE COURT:  But, you see, I appreciate your

1  concern for them, but if sometime in the future you have

2  buyer's remorse about this plea agreement, to be very

3  blunt about it, and you say, "I didn't understand what

4  was happening and I didn't knowingly and intelligently

5  give up my rights and I didn't understand the

6  consequence of my plea," then that would have to be

7  litigated.

8          I don't want to create a situation where that's

9  going to occur.  So I have to ask you again if you have

10  any doubt about your ability mentally to proceed this

11  morning, then we should proceed at a different time.

12          THE DEFENDANT:  I'm prepared to sign today.  I

13  feel I can do so knowingly and intelligently.

14          THE COURT:  Okay.  Let me then discuss with you

15  the elements of each of these offenses.  You are

16  actually offering to plead guilty to three offenses.

17  One of them is dealing in explosives without a license.

18  That's a violation of 18 United States Code Section

19  842(a)(1) and in order for you to be found guilty of

20  that offense the Government would have to prove beyond a

21  reasonable doubt that you engaged in the business of

22  dealing explosives and that you did not obtain a license

23  to do so.

24          Do you understand the elements of that offense?

25          THE DEFENDANT:  I understand.

1          THE COURT:  And do you understand that if the

2     Government failed to prove either of one of those

3     elements beyond a reasonable doubt, you could not be

4     convicted of that offense?

5          THE DEFENDANT:  I understand.

6          THE COURT:  The second charge is storing

7     explosives in a manner not in conformity with

8     regulations, which is a violation of 18 United States

9     Code section 842(j).  And the elements of that offense

10    are that you stored explosive materials and that the

11    storage of the explosives did not comply with

12    regulations issued by the Secretary of the Treasury, and

13    again the Government would have to prove each of these

14    elements beyond a reasonable doubt.

15          Do you understand the elements?

16          THE DEFENDANT:  I do, Your Honor.

17          THE COURT:  And do you understand that if the

18    Government failed to prove either one of those elements

19    beyond a reasonable doubt, you could not be convicted?

20          THE DEFENDANT:  I understand, Your Honor.

21          THE COURT:  Okay.  The third element is

22    mailing -- excuse me, the third offense, rather, is

23    mailing injurious articles in violation of 18 United

24    States Code section 1716.  There are three elements.

25    One is that you knowingly mailed or caused to be mailed,

1   the second element, items which were declared

2   non-mailable in Title 18 United States Code section

3   1716, and, third, that it was not in accordance with the

4   rules and regulations authorized by the Postal Service.

5           Do you understand those elements?

6           THE DEFENDANT:  I do, Your Honor.

7           THE COURT:  Do you understand the Government

8   again would have to prove each element beyond a

9   reasonable doubt in order for you to be convicted?

10          THE DEFENDANT:  I do, Your Honor.

11          THE COURT:  And if it failed to prove any one of

12  those three elements, you could not be convicted.

13          Do you understand that?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  Okay.  The maximum penalties for

16  these offenses are as follows:  For the dealing in

17  explosives without a license, that is, count 1, ten

18  years in prison, a maximum fine of $250,000, a maximum

19  term of supervised release of three years, and a

20  mandatory special assessment of $100.

21          For count 2, one year in prison, a maximum fine

22  of $100,000, one year of supervised release and a $25

23  mandatory special assessment.

24          And for count 3, one year in prison, a $100,000

25  fine, a one-year term of supervised release, and a $25

1   mandatory special assessment.

2           Do you understand the maximum penalties?

3           THE DEFENDANT:  I do, Your Honor.

4           THE COURT:  Under this plea agreement there is

5   an agreement that will impose some limits on the

6   sentence that you can receive, although the actual

7   sentence is up to the Court.

8           The plea agreement provides that you would

9   receive a sentence at sentencing guideline level 1 --

10  or, excuse me, sentencing guideline level 10 and that

11  you would pay a $150 mandatory special assessment.

12  The specific number of months of imprisonment, the

13  number of years of supervised release or the amount of

14  fine would be left to the Court's discretion.  The

15  amount of months that you could receive for a sentence

16  at guideline level 10 depends entirely on your criminal

17  history.

18          Counsel, do we have an agreement or an estimate

19  as to what Mr. Ver's criminal history is?

20          MR. FREWING:  We do, Your Honor.  And actually

21  Mr. Kirchick -- we've been -- I'm going to apologize up

22  front, Your Honor.  We've been revising this plea

23  agreement on the fly and Mr. Kirchick points out that it

24  actually should be an adjusted offense level of 10,

25  which we actually had earlier this morning and we

1    changed it and it should be an 11.

2         THE COURT:  All right.  So can you -- it's going

3    to be an 11.

4         MR. FREWING:  Just to make it very clear.  If

5    you get to the base offense level of 12 as stated in

6    paragraph 7, it's a plus 1 for this specific --

7         THE COURT:  The math is wrong.  If you could

8    correct then on the face of the plea agreement paragraph

9    7G and paragraph 8, line 23 to read an 11 and have

10   everyone initial it.

11        MR. FREWING:  Thank you, Your Honor.

12        THE COURT:  And while that's happening is there

13   any information about Mr. Ver's criminal history?

14        MR. FREWING:  Your Honor, the Government,

15   although not willing to commit until there's a PSR,

16   believes that Mr. Ver's criminal history is criminal

17   history category 1.

18        MR. KIRCHICK:  So does Mr. Ver.

19        THE COURT:  I will advise him as to the entire

20   range of level 11, but I just wanted to get some idea of

21   the history.

22        MR. FREWING:  For the record, Your Honor, we

23   have made those two changes so that the adjusted offense

24   level is 11.  The parties initialed in both places for a

25   total of three areas that we've initialed on this plea

1    agreement.

2         THE COURT:  All right.  Mr. Ver, a couple of

3    things about this.

4         Just for your information, the sentencing

5    guideline level 11, a person with no prior criminal

6    history at all, which is what we were talking about with

7    a level 1, could receive between eight and fourteen

8    months in prison.  If someone had a very serious

9    criminal history, which is called a level 6, someone

10   could receive up to 33 months in prison.

11        The range that the Court will operate within

12   will be determined by your criminal history which is

13   something that will be determined by the Court after

14   receiving the probation report.

15        Do you understand that?

16        THE DEFENDANT:  I do.  Thank you, Your Honor.

17        THE COURT:  And as far as the fine is concerned,

18   conditions of supervised release, that's entirely up to

19   the Court as well.

20        Do you understand that?

21        THE DEFENDANT:  I do, Your Honor.

22        THE COURT:  Now, with regard to the agreement

23   between you and the Government that the offense level

24   will be an 11, that is an agreement that the Court can

25   either accept or reject.  The Court can say fine, I

1    agree with that, I accept that, and then the Court is

2    bound to sentence you within that range.  Or the Court

3    can say for whatever reason at the sentencing the

4    guideline level 11 is too high or too low and the Court

5    does not agree with it, in which case you and the

6    Government would both have the opportunity to withdraw

7    from the plea agreement.

8            Do you understand that?

9            THE DEFENDANT:  When is that supposed to happen,

10   Your Honor?

11           THE COURT:  When the probation report is

12   received by the Court.

13           THE DEFENDANT:  Approximately 30 days?

14           THE COURT:  It's going to be more like 90 days.

15           THE DEFENDANT:  Okay.

16           THE COURT:  But the point is that in this type

17   of plea agreement the Court only has two choices.  It's

18   yes or no.  There are other kinds of plea agreements

19   where the Court has much broader discretion, but in this

20   one once it comes back it will be guideline level 11

21   with the criminal history category.  And if I think you

22   should be sentenced outside that range, either higher or

23   lower, I cannot impose that sentence without giving you

24   the right to withdraw your plea.

25           Do you understand that?

1        THE DEFENDANT:  I understand, Your Honor.  Thank

2   you.

3        THE COURT:  Let's move on and talk about the

4   Constitutional rights that you have in this matter.

5   You have the right to be represented by a lawyer at

6   every stage of the case.  If you want to go to trial,

7   you have the right to be represented by a lawyer at

8   trial.  And if you at any point in time cannot afford a

9   lawyer, you have the right to have the Government pay

10  for your lawyer at no cost to you.

11       Do you understand that?

12       THE DEFENDANT:  I do, Your Honor.

13       THE COURT:  You have the right to a speedy

14  public jury trial on all charges in this case.

15       Do you understand that right?

16       THE DEFENDANT:  I do, Your Honor.

17       THE COURT:  Do you give up that right?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  You have the right to see, hear and

20  question any witnesses who testify against you.

21       Do you understand that right?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  Do you give up that right?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  You have the right to call witnesses

1    on your own behalf and, if the witnesses you want to

2    call will not come to court voluntarily, you have the

3    right to court orders to require those witnesses to

4    come.

5           Do you understand that?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Do you give up that right?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  You have the right to testify for

10   yourself and give your own version of what occurred

11   here.

12          Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Do you give up right?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  You have the right to remain silent,

17   which means that no one can force you to take the stand

18   and be a witness against yourself and no one can comment

19   on the fact that you have remained silent as somehow

20   showing that you're guilty.

21          Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you give up right?

24          THE DEFENDANT:  Do I have to to sign this?

25          THE COURT:  Well, you can't plead guilty unless

1   you give up your Constitutional rights.  If you don't

2   want to give them up, you don't have to.  Nobody can

3   force you to do that.

4          And I mean this -- you know, we go through

5   this -- I probably take hundreds of pleas in a year.  So

6   it becomes find of a routine for me, but this is the

7   only case you have and once you enter the plea it's very

8   hard to change your mind.

9          So you better be sure that this is what you want

10  to do and if you're not sure, then I don't want to take

11  your plea.

12         THE DEFENDANT:  Can I have a one-week extension,

13  Your Honor?  I'd feel more comfortable discussing things

14  a little bit further.  I didn't realize this morning

15  that we were going to sign the plea agreement.

16         MR. FREWING:  Your Honor, we do have a Speedy

17  Trial Act issue.  We're going to need to go forward in

18  this case.  We've put this matter off a couple times.

19  The information the Government has filed was filed on

20  October 9, I believe, or at least that was the date of

21  the arraignment.  But we do have sufficient time if we

22  do need to put it over.

23         THE COURT:  I have a suggestion.  Is everyone

24  available Friday?

25         MR. FREWING:  Yes, Your Honor.  I'm certain the

1    Government is.

2            MR. KIRCHICK:  I am available Friday, Your

3    Honor.

4            THE COURT:  9:30.  Friday morning.

5            MR. FREWING:  That's fine, Your Honor.

6            THE COURT:  And seriously, sir, this is it.  I

7    mean this is -- this is the -- once this plea is

8    accepted -- and it's why I spend so much time taking

9    them.  I don't want to have to go back and deal with

10   them when people change their minds.  So you really have

11   to be sure that this is what you want to do and once

12   that plea is accepted then we proceed on the basis that

13   you've been convicted of these crimes and we prepare the

14   presentence report and we go ahead as agreed upon.

15           This is a very very serious matter and I would

16   encourage you to discuss it thoroughly with Mr. Kirchick

17   between now and Friday.  I think because of the time

18   constraints that Mr. Frewing has alluded to I'm

19   reluctant to put it over any longer than that.

20           So Friday morning at 9:30 we will continue with

21   this.

22           MR. KIRCHICK:  Thank you.

23           THE DEFENDANT:  Thank you, Your Honor.

24           THE COURT:  Do you want to just hang on to this?

25           MR. FREWING:  We'll take that plea agreement

1    back and we'll revise it when we come back Friday.

2            Thank you, Your Honor.

3            THE COURT:  Very good.

4

5                        ---oOo---

1            CERTIFICATE OF REPORTER

2

3

4          I, Peter Torreano, Official Court Reporter of

5    the United States District Court for the Northern

6    District of California, 280 South First Street, San

7    Jose, California, do hereby certify:

8    That the foregoing transcript is a full, true and

9    correct transcript of the proceedings had in United

10   States v. Ver, Case No. CR-01-20127-JF, dated October 2,

11   2001; that I reported the same in stenotype to the best

12   of my ability, and thereafter had the same transcribed

13   by computer-aided transcription as herein appears.

14

15

16

17

18

19                    _____

20                    PETER TORREANO, CSR
                       License Number C-7623

21

22

23

24

25