```
                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                        SAN JOSE DIVISION

UNITED STATES OF AMERICA,    )   CR-01-20127-JF
                             )
            Plaintiff,       )
                             )   San Jose, California
                 vs.         )   May 2, 2002
                             )
ROGER VER,                   )
                             )
            Defendants.      )
_____)


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JEREMY FOGEL
                  UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

For the United States        United States
of America:                  Attorney's Office
                             By:  SCOTT H. FREWING, AUSA
                             150 Almaden Avenue
                             Suite 900
                             San Jose, California  95113

For the Defendant            Arguedas, Cassman & Headley,
Ver:                         LLP
                             By:  CRISTINA C. ARGUEDAS
                             803 Hearst Avenue
                             Berkeley, California  94710



Court Reporter:              PETER TORREANO, CSR
                             License Number C-7623
```

```
 1  San Jose, California                            May 2, 2002
 2                       P R O C E E D I N G S
 3          THE COURT:  At this time the Court will take up
 4  the matter of United States versus Roger Ver.
 5          And could I have counsels' appearances for the
 6  record, please.
 7          MR. FREWING:  Scott Frewing for the United
 8  States.  Good morning, Your Honor.
 9          MS. ARGUEDAS:  And Chris Arguedas for Roger Ver
10  this morning and Roger is present.
11          THE COURT:  Good morning.  The Court has read
12  and considered the following documents -- I'm sorry.
13          Ms. Santos, did you want to state your
14  appearance.
15          MS. SANTOS:  Laurie Santos, US Probation.  Good
16  morning, Your Honor.
17          THE COURT:  Good morning.
18          The Court has read and considered the probation
19  report prepared by Ms. Santos and dated April 23rd,
20  2002.  The Court has read and considered the
21  Government's sentencing memorandum filed May 1, 2002 and
22  the Court has read and considered the evaluation of
23  Dr. James Missett dated April 16th, 2002.  And the Court
24  has also received a letter dated October 30th, 2001 by
25  Kym, K-Y-M, Barnings, B-A-R-N-I-N-G-S, a close friend of
```

```
 1   the Defendant.
 2            I did want to clarify one thing before hearing
 3   from counsel and from Mr. Ver and that is that
 4   Ms. Santos pointed out to me this morning that there is
 5   an error in the sentencing recommendation, that if the
 6   Court were to adopt a total offense level 11, which is
 7   the agreed-upon offense level in the 11(e)(1)(C) plea
 8   agreement, and criminal history category 3, which is the
 9   criminal history category calculated by Probation, then
10   the appropriate guideline is twelve to eighteen months
11   rather than ten to sixteen.
12            The Court could arrive at a ten- to
13   sixteen-month range by determining that the criminal
14   history is overrepresented and I'm open to that.  I'd
15   like to hear comment on that.
16            The Government is recommending a ten-month
17   sentence.  So I've taken that into account, but I'd like
18   to hear from counsel and from Mr. Ver.
19            So Counsel?
20            MS. ARGUEDAS:  I believe, Your Honor, that we
21   are all in agreement that that's the way it should be
22   arrived at and we also are asking for a ten-month
23   sentence.  I don't know whether we need to explicitly
24   request this or if it automatically happens, but in the
25   ten-month sentence we're asking that it be served five
```

1  months in custody and five months in the halfway house,
2  which is permissible under zone C.
3       THE COURT: Permissible but not required.
4       MS. ARGUEDAS: Right.
5       THE COURT: Okay.
6       MS. ARGUEDAS: If I need to say more about that?
7       THE COURT: I would like your thinking about
8  that particularly since Dr. Missett and Ms. Santos seem
9  to have a different view.
10      MS. ARGUEDAS: Primarily, Your Honor, my
11 reasoning is that the events that underlie this offense
12 happened now a couple of years ago and he's been on
13 pretrial -- you know, bail and been extremely well
14 behaved and he has been doing something very productive
15 which is starting a business that has to do with buying
16 and selling computer memory I think, something to do
17 with computers. And he's it. He is the business.
18      He may be able to find somebody who can let it
19 not die if he was gone for five months, but it's because
20 of his knowledge people call up on the phone and say
21 they want a certain something and he knows the part
22 number in his head and he has a website about it and
23 that's why he's able to make it successful.
24      So whoever he gets to try and take it over is
25 only going to be able to keep it on life support for

five months and then I don't think he would be able to do it for ten months. So he's going to be on supervised release, which I think is a good thing, and the question is do we want to extinguish his business, and I would say the answer should be no.

THE COURT: All right. Mr. Frewing?

MR. FREWING: Yes, Your Honor.

I must say I had noted the change in the -- pardon me, the -- I guess the error in the calculation of the actual sentencing range previously and I had brought it to everyone's attention and then failed to sort of recall that when I wrote my very brief sentencing memo yesterday.

I think a ten-month sentence in this case is just. I think the departure for the criminal history overrepresentation isn't objectionable given that all the other offenses are essentially traffic offenses.

I do have some concern about the Court then in addition deciding to depart -- or to split the sentence following a departure. It seems to me that is a pretty big departure in total from the actual sentence that the Guidelines calculate.

Mr. Ver's conduct was serious. I think one factor that the Court can take into consideration or at least should consider is there were some pipe bombs

1  involved in this case as well that were not charged and
2  are not incorporated in the conduct that's before the
3  Court except arguably as relevant conduct.
4          The split sentence is -- would result only in
5  five months incarceration for what I think is a fairly
6  serious offense.  It's my recommendation to do the
7  ten-month sentence in prison in total.
8          THE COURT:  Thank you.
9          Ms. Santos?
10         MS. SANTOS:  Probation does stand by the
11 recommendation presented here to the Court today, Your
12 Honor.
13         After talking with Dr. Missett he did basically
14 indicate that the behavior that occurred a couple of
15 years ago wasn't just juvenile behavior.  It was not
16 just immature actions; that apparently Mr. Ver still has
17 some of these negativistic attitudes and Dr. Missett did
18 say that incarceration would be most appropriate as far
19 as a sentence was concerned.
20         So Probation does stand by that recommendation.
21         THE COURT:  Mr. Ver, you have an opportunity to
22 address the Court.  Is there anything you would like to
23 say this morning?
24         THE DEFENDANT:  I think my attorney summed it up
25 very well.

1     THE COURT: Thank you.
2     Well, I've given this case a lot of thought.
3  I'm very troubled by it. And when I say that I'm
4  troubled by it I'm troubled by it in several ways. Not
5  only am I troubled by the underlying conduct, which is
6  quite serious, but I don't want to overreact either and
7  I think that's what makes it hard.
8     I think if you have a case which strikes you as
9  being particularly severe, in a way that's kind of an
10 easy thing to just say all right, we'll throw the book
11 at the defendant and that will satisfy that impulse.
12 But I don't think judges ought to sentence anybody
13 impulsively. You have to look at the offense and you
14 have to look at the person who committed it.
15    There are elements in the probation report and
16 in Dr. Missett's report which concern me a great deal.
17 One has to be very careful. Mr. Ver, you're a young man
18 and you've led a law-abiding life for the last two years
19 and you've by all accounts performed well on pretrial
20 release. I did note in your letter that you accepted
21 that your conduct was illegal, and I appreciate that.
22    I also don't in any way want to confuse your
23 political beliefs, which you are absolutely entitled to
24 have, with your criminal conduct. There's a long and
25 honorable tradition of libertarian politics in our

1   country and I don't mean to in any way hold that against
2   you.  It's something that you're entitled to have.
3          The problem, though, is that the law is a
4   representation of authority in a certain way.  People
5   can disagree and they can disagree very vigorously and
6   very reasonably about what ought to be legal and what
7   ought not to be legal and how much the Government ought
8   to do or ought not to do.
9          But there is a point at which we start talking
10  about public safety and I think even the most die hard
11  libertarian would agree that one function of government,
12  if there is to be a government, is to protect public
13  safety.  So then it's just a question of how you do it,
14  how you do it in a way that's least invasive of
15  individual liberties.
16         Selling explosives over the Internet doesn't cut
17  it in any society that I can imagine and I think it's --
18  the conduct here is simply not tolerable conduct and
19  it's not -- I don't think one has to be a big government
20  person or believe in government regulation of every
21  aspect of human life to suggest that people should not
22  be selling explosives over the Internet.
23         The other thing that concerns me is that in
24  looking at your social history it seems to me you've got
25  some reasons for not trusting authority, and that's

1 okay. I mean, those are feelings that are a product of
2 your life experience. Nonetheless, those feelings don't
3 give you the right to be above the same social
4 constraints that bind all of us.
5 And I'm not saying this as well as I'd like to,
6 but I think there's a difference between saying I
7 believe that the government which governs best governs
8 least and saying that I'm above the law totally, that
9 I'm so smart, I'm so able, I'm so perceptive that I
10 don't have to follow the rules that apply to other human
11 beings.
12 There's a difference between those two
13 positions. And while one of them is a very respectable
14 position that I think any judge ought to uphold and
15 support rather than punish, the other I think is why we
16 have courts. It's when a person believes that he or she
17 is so important and so intelligent and so much better
18 than everybody else that they don't have to follow even
19 the most basic rules that keep us together in this
20 society.
21 I hope and I actually suspect that you've grown
22 up a bit since you did these things. I don't know if
23 you have any desire to pursue therapy, to deal with your
24 issues about your father and about your family of
25 origin. That's your choice, but I think a lot of the --

1  a lot of the edge in the things you did when these
2  offenses were committed I think may be traced to that,
3  and that is not in any way meant to devalue the
4  political beliefs that you have.
5         Again, I think one can have sincere political
6  beliefs and also have some personal issues that cause a
7  person to do irrational things.  Those things are not
8  inconsistent and, frankly, I think that's what happened
9  here.
10        I think that these offenses are very serious.
11 They could have been a lot more serious.  The bombs
12 could have gone off or people could have used them in
13 destructive ways.  Selling bombs to juveniles is never
14 okay.
15        I'd like to say that the five and five sentence
16 that your attorney proposed is something that I'm
17 comfortable with, but I just can't.  And it's not a
18 desire to be overly punitive or to send you a message.
19 It's simply saying that this conduct -- when the law
20 punishes behavior, criminal law is directed at conduct.
21        This conduct to me would have warranted a much
22 stiffer sentence than ten months.  There's a plea
23 agreement.  I'm bound by it.  I'm not going to upset it.
24 It was arrived at in good faith by the Government and by
25 the defense and I will respect it, but I'm not going to

1  dilute it.

2     And I think part of growing up and part of
3  accepting responsibility for what you did is recognizing
4  that when you do something that's this dangerous and
5  this anti-social that there is a significant consequence
6  for it.

7     And I certainly don't mean to devalue the
8  efforts you've made since then or the growth that you've
9  experienced since then. I want to encourage it, but I
10 think part of it is recognizing that this is a big deal.
11 This case is not insubstantial and ten months actually I
12 think in the scheme of things is something of a break
13 and I think it's something of a recognition that you
14 have grown up, that you have accepted some
15 responsibility, that you don't have a prior criminal
16 history.

17    But particularly post-9/11 you get cases like
18 this coming in here the Government is seeking to put
19 people away for a lot longer than ten months.
20 So, you know, I don't minimize the effects on your
21 business and on your personal life or anything else, but
22 I just can't in good conscious do less than that.

23    Pursuant to the Sentencing Reform Act of 1984,
24 it is the judgment of this Court that the Defendant
25 Roger Keith Ver is hereby committed to the custody of

```
 1  the United States Bureau of Prisons to be imprisoned for
 2  a term of ten months.
 3         Upon release from custody the Defendant shall be
 4  placed on supervised release for a term of three years.
 5  Within 72 hours of release from custody of the Bureau of
 6  Prisons the Defendant shall report in person to the
 7  probation office in the district to which the Defendant
 8  is released.
 9         While on supervised release the Defendant shall
10  not commit another federal, state or local crime, shall
11  comply with the standard conditions that have been
12  adopted by this Court and shall comply with the
13  following special conditions:  The Defendant shall
14  participate in a mental health treatment program as
15  directed by the probation officer.
16         The Defendant is to pay part or all of the cost
17  of this treatment in an amount not to exceed $60 per
18  session as deemed appropriate by the probation officer.
19  Payment shall never exceed the total cost of mental
20  health counseling.  The actual co-payment schedule shall
21  be determined by the probation officer.
22         The Defendant shall submit his person,
23  residence, office, vehicle or any property under his
24  control to a search.  Such a search shall be conducted
25  by a United States Probation officer at a reasonable
```

1  time and in a reasonable manner based upon reasonable
2  suspicion of contraband or evidence of a violation of a
3  condition of release.  Failure to submit to such a
4  search may be grounds for revocation.  The Defendant
5  shall warn any residents that the premises may be
6  subject to searches.
7           The Defendant shall refrain from accessing via a
8  computer any material that relates to selling explosives
9  over the Internet.  The Defendant shall not own or
10 possess any firearms, ammunition, destructive devices or
11 other dangerous weapons.  The Defendant shall pay a fine
12 that is imposed by this judgment that remains unpaid as
13 directed by the probation officer.
14          I do agree with Mr. Frewing that some fine is
15 appropriate in this matter because there was profit from
16 selling the explosives and Mr. Ver does appear to have
17 the ability to pay a fine.  I think in light of the
18 overall disposition of the case that I'm inclined to
19 impose the statutory minimum fine, which is $2,000, and
20 that will be the order of the Court.
21          It is further ordered that the Defendant shall
22 pay to the United States a special assessment of $150
23 which shall be due immediately.
24          Mr. Ver, the plea agreement contained a waiver
25 of your right to appeal.  However, if you believe that

```
 1  you have a basis for an appeal, an appeal must be filed
 2  within ten days of today.
 3          And I have no problem with a self-surrender.
 4  Was there some discussion as to when that would be?
 5          MS. ARGUEDAS:  Ninety days?
 6          MR. FREWING:  No objection.
 7          THE COURT:  Without objection.  And again I
 8  think that's a credit to your good performance on
 9  pretrial release.
10          MS. ARGUEDAS:  Thank you.
11          THE COURT:  The Defendant is to report to the
12  facility designated by the Bureau of Prisons on August
13  2nd, 2002 at 9:00 a.m.
14          MS. ARGUEDAS:  And could you recommend Lompoc?
15          THE COURT:  I can recommend a minimum security
16  facility in California.  Beyond that -- every time I've
17  tried to recommend a specific facility to the BOP I get
18  a note from them saying I can't do that.
19          MS. ARGUEDAS:  Okay.
20          THE COURT:  But I can recommend a minimum
21  security facility in California.
22          MS. ARGUEDAS:  All right.
23          THE COURT:  And there's only one of those that I
24  know about.  Okay?
25          MS. ARGUEDAS:  Thank you, Your Honor.
```

1    MR. FREWING:  Thank you, Your Honor.
2    MS. SANTOS:  Thank you, Your Honor.
3    (Whereupon, the proceedings concluded.)
4
5                    ---oOo---

1   CERTIFICATE OF REPORTER

2

3

4

5       I, Peter Torreano, Official Court Reporter of

6   the United States District Court for the Northern

7   District of California, 280 South First Street, San

8   Jose, California, do hereby certify:

9       That the foregoing transcript is a full, true

10  and correct transcript of the proceedings had in United

11  States v. Ver, Case No. CR-01-20127-JF, dated May 2,

12  2002; that I reported the same in stenotype to the best

13  of my ability, and thereafter had the same transcribed

14  by computer-aided transcription as herein appears.

15

16

17

18

19                              /S/

20                              _____

                                PETER TORREANO, CSR
21                              License Number C-7623

22

23

24

25